IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| BROADCAST MUSIC, INC.; MJ PUBLISHING TRUST d/b/a MIJAC MUSIC; MJ TWELVE MUSIC; SKYFOREST MUSIC CO., INC.; CONCORD MUSIC GROUP, INC. d/b/a JONDORA MUSIC; GEORGE GUY agent of MIC SHAU MUSIC COMPANY; SONY/ATV SONGS LLC; UNICHAPPELL MUSIC INC.; SLOOPY II INC. d/b/a SLOOPY II MUSIC; WELSH WITCH MUSIC; E.O. SMITH MUSIC; BROKEN ARROW MUSIC CORPORATION; COTILLION MUSIC, INC.; PEPPERMINT STRIPE MUSIC; R AND R NOMAD PUBLISHING COMPANY, A DIVISION OF R AND R NOMAD PUBLISHING CO. LLC; 4U2ASKY ENTERTAINMENT INC.; SONGS OF UNIVERSAL, INC.; EMI VIRGIN SONGS, INC. d/b/a EMI LONGITUDE MUSIC, | * | |
| Plaintiffs, | * | |
| v. | * | CV 614-121 |
| GATA'S STATESBORO, LLC d/b/a GATA'S SPORTS BAR & GRILL; and CHRISTIAN K. BENNETT, individually, | * | |
| Defendants. | * | |

**O R D E R**

Presently pending before the Court is Plaintiffs' Motion for Default Judgment. (Doc. 12.) For the reasons set forth below, Plaintiffs' motion is **GRANTED**.

## I. BACKGROUND

Plaintiffs' Complaint alleges copyright infringement based on the public performance and consent to performance of Plaintiffs' musical compositions. (Compl., Doc. 1, ¶ 28.) According to the facts alleged in the Complaint, Plaintiffs, other than Broadcast Music, Inc.("BMI"), are copyright owners of at least one of the songs in this case and have granted BMI the right to license public performance rights. (Id. ¶¶ 3-21.) BMI is a music performing rights organization that licenses the right to publicly perform any of the works in BMI's repertoire by means of "blanket license agreements." (Loyd Decl., Doc. 12-2, ¶ 2.) At all relevant times, Plaintiffs owned the copyrights for the twelve musical compositions involved in this case: "Billie Jean," "Everlong," "Feel Like Makin' Love," "Green River," "Mary Had a Little Lamb," "Piece of My Heart," "Rhiannon," "Undone a/k/a Undone - The Sweater Song," "Ohio," "Seven Nation Army," "Ain't No Rest for the Wicked," and "Simple Man". (Compl. ¶ 32 & Ex. 1.) For each of these musical compositions, BMI was the licensor of the public performance rights. (Id. ¶ 32)

Defendant Gata's Statesboro, LLC is a limited liability company organized and existing under the laws of the State of Georgia, which operates, maintains and controls Gata's Sport's Bar & Grill in Statesboro, Georgia (the "Establishment"). (Id. ¶ 22.) Defendant Christian K. Bennett is the owner of Gata's Statesboro, LLC with primary responsibility for the operation and management of the limited liability company and the Establishment. (Id. ¶¶ 25-26.)

According to the reports of Patrick Dowd, an investigator employed by BMI, he visited the Establishment on April 26, 2013, June

2

6, 2014, and August 19, 2014. (Mullaney Decl., Doc. 12-3, ¶¶ 10-13 & Exs. A-C.) During those visits, Dowd, using a battery-powered digital recorder, made digital recordings of music that was played either live by a band or via satellite radio or other digital sources. (Id., Exs. A-C.) Approximately four to five days after each visit, Dowd submitted the digital audio recording to BMI's General Licensing Department via overnight carrier. (Id.) BMI employees Stirling Snow, John Davis, and Rebecca Delius reviewed the recordings and identified eleven of the compositions identified in this case. (Id. ¶¶ 10-12 & Exs. A-C.) Additionally, the recording from August 29, 2014 was submitted to a digital review through patented digital audio technology, licensed by BMI, by Shazam Entertainment Limited, used to identify any additional recorded musical works. (Id., ¶ 12 & Ex. C.) This review identified one additional composition ("Green River"), which is identified in this case. (Id.)

At no time have Defendants sought or obtained a licensing agreement from BMI. (Id. ¶ 4.) BMI sent thirty-one letters via FedEx, First Class mail, email, and fax to Defendants warning of infringement and advising them of licensing options. (Id. ¶¶ 3, 5, 6, 13 & 14.) Because Defendants failed to respond to the correspondence and continued to offer unauthorized public performance of BMI-licensed music, BMI sent investigator Dowd to the Establishment, on the above mentioned dates, to record music publically performed there. (Id. ¶¶ 10-12.) Moreover, BMI employees telephoned Defendants on sixty-four occasions to notify Defendants of infringement and on a number of those occasions spoke to persons associated with the Establishment's operations, including two phone calls with Defendant Bennett. (Id. ¶

8.) Defendants did not enter into a license agreement and continued to publically perform or allow performance of music in BMI's repertoire. (Id. ¶ 9.) Thus, on November 20, 2014, Plaintiffs filed this Complaint against Defendants, alleging twelve counts of willful copyright infringement in violation of 17 U.S.C. § 101. (Doc. 1.) On November 24, 2014, Defendants were served with the Summons and Complaint. (Docs. 6 & 7.) As of the date of this Order, neither Defendant has answered or otherwise acknowledged the pendency of this suit. Plaintiffs received an entry of default on December 22, 2014. (Doc. 9.) On April 14, 2015, Plaintiffs filed the present Motion for Default Judgment. (Doc. 12.)

## II. DISCUSSION

"[D]efendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for a judgment entered . . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] A defendant, by his default, is only deemed to have admitted the "plaintiff's well-pleaded allegations of fact." Id. "[T]hree distinct matters [are] essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).

---

[1] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in the Eleventh Circuit).

4

### A. Jurisdiction

Plaintiffs have brought this action for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101. Thus, this Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

### B. Liability

Based on Plaintiffs' allegations and the evidence in the record, the Court is satisfied that the well-pleaded allegations of the Complaint state a cause of action for copyright infringement against Defendants and that there is a substantive, sufficient basis in the pleadings for the relief Plaintiffs seek. In an action alleging copyright infringement under 17 U.S.C. § 101 for public performance of musical compositions, a plaintiff must prove (1) that the plaintiff originally authored or composed the work, (2) that the plaintiff complied with copyright formalities under Title 17 of the United States Code, (3) that the plaintiff is the proprietor of the compositions in the action, (4) that the defendant publicly performed the composition, and (5) that the defendant did not have a license from or permission by the plaintiff or his representative to perform the composition. E. Beats Music v. Andrews, 433 F. Supp. 2d 1322, 1325 (M.D. Ga. 2006) (citations omitted). Proof of copyright registration is sufficient to prove the first three elements. See id. at 1325-26. The fourth element, public performance, may be proved by affidavit of an investigator. Id. at 1326.

Here, the facts alleged in Plaintiffs' Complaint establish Defendants' liability under 17 U.S.C. § 101. Plaintiffs submitted proof of copyright registration and BMI's right to license the public

5

performance rights of the musical compositions, thereby establishing the first three elements. (Compl. ¶ 32 & Ex. 1.) Investigator Dowd's certified reports that he recorded the public performance of the music compositions inside the Establishment, as well as the declarations of BMI employees who reviewed the reports, satisfy the fourth element. (Mullaney Decl., Exs. A-C) Finally, the facts in the Complaint establish that Defendants failed to procure a license or permission from Plaintiffs to perform the compositions. (Id. ¶ 4) Thus, the Court finds that Defendants infringed on Plaintiffs' copyrighted works by publicly performing twelve musical compositions without a license, in violation of 17 U.S.C. § 101. Therefore, Plaintiffs are entitled to default judgment.

### C. Damages

Notwithstanding the propriety of default judgment against Defendants, it remains incumbent on Plaintiffs to prove their damages. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." Whitney Nat'l Bank v. Flying Tuna, LLC, No. 11-0249, 2011 WL 4702916, at *3 (S.D. Ala. Oct. 4, 2011). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see also Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for the award). However, a judicial

determination of damages is unnecessary where the claim is for a sum certain or for a sum which can by computation be made certain. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1364 n.27 (11th Cir. 1997); see also S.E.C. v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005).

i.  Injunctive Relief

First, Plaintiffs seek a permanent injunction against Defendants from any further copyright infringement. Under 17 U.S.C. § 502(a), a court "may grant temporary and permanent injunctions on such terms as it may deem reasonable under the circumstances." Past infringement and substantial likelihood of future infringements normally entitle the copyright holder to a permanent injunction against the infringer. Pac. & S. Co. v. Duncan, 744 F.2d 1490, 1499 (11th Cir. 1984).

The Court finds a permanent injunction to be proper in this case. Plaintiffs have established both Defendants' past infringement and the likelihood of future infringement. Defendants never sought to obtain a licensing agreement with BMI and continued to publicly perform or allow the performance of copyrighted compositions despite receiving thirty-one letters and sixty-four phone calls from BMI warning Defendants of their infringement. (Mullaney Decl. ¶¶ 3-9.) Because of Defendants' persistent infringement, even after being warned of their potential liability, this Court finds Defendants are likely to continue to infringe on Plaintiffs' copyrights. Upon the aforementioned findings of fact, the Court issues a permanent injunction against Defendants pursuant to 17 U.S.C. § 502(a), enjoining and restraining Defendants from publicly performing or causing the public performance of any of the Plaintiffs' copyrighted musical compositions and all other compositions in the BMI repertory.

7

ii. <u>Statutory Damages</u>

Second, Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c). Under this section, plaintiffs may elect to receive statutory damages for copyright infringement in an amount not less than $750 per infringement, and not to exceed $30,000, "as the court considers just." <u>Id.</u> § 504(c)(1). Where the infringement is willful, the Court may augment the damages to no more than $150.000. <u>Id.</u> § 504(c)(2).

> Factors which are to be considered in determining the measure of statutory damages are: (1) the expenses saved and profits reaped by the Defendant in connection with the infringements; (2) the revenues lost by the Plaintiffs as a result of Defendant's conduct; and (3) the infringers' state of mind, that is, whether willful, knowing, or merely innocent.

<u>Morely Music Co. v. Café Cont'l, Inc.</u>, 777 F. Supp. 1579, 1583 (S.D. Fla 1991) (citing <u>Boz Scaggs Music</u>, 491 F. Supp. 908, 914 (D. Conn. 1980)).

In their motion, the Plaintiffs elected, pursuant to 17 U.S.C. § 504, to seek statutory damages of $4,000.00 per infringement or $48,000.00 in total statutory damages as compensation for the Defendants' infringements. (Doc. 12-1, ¶ 9) In support of their request, Plaintiffs contend that the total statutory damages sought is approximately three times the license fees (estimated by Plaintiffs to be $14,991.60 to cover licensing from March 2012 to the present) which the Defendants would have paid for the right to publicly perform the Plaintiffs' musical compositions during the relevant period. The Court acknowledges that damages ranging from approximately two to four times the license fees have been found to be appropriate measures of damages in similar cases. <u>See</u> <u>Chi-Boy Music v. Charlie Club, Inc.</u>, 930 F.2d 1224, 1229-30 (7th Cir.1991) (awarding damages three times

8

the license fees); Broad. Music, Inc. v. Entm't Complex, Inc., 198 F. Supp. 2d 1291, 1296(N.D. Ala. 2002) (awarding damages three times the license fees); Dream Dealers Music v. Parker, 924 F. Supp. 1146, 1153 (S.D. Ala. 1996) (awarding damages approximately three times the license fees); Major Bob Music v. Stubbs, 851 F. Supp. 475, 481 (S.D. Ga. 1994) (awarding damages three times the license fees); Flyte Time Tunes v. Wheeler Tavern, Inc., No. 1:07-cv-065, Doc. 35 (S.D. Ga. Oct. 3, 2008) (awarding damages approximately two times the license fees). Therefore, the Court awards statutory damages to Plaintiffs in the amount of $3,500.00 per infringement, for a total award of $42,000.00. This amount, which is approximately three times the license fees that would have been paid by Defendants over the relevant period, is warranted by evidence of Defendants' willful conduct and the need to provide a deterrent to the Defendants' further infringing conduct.

iii. Attorney's Fees and Costs

Finally, Plaintiffs seek payment of their reasonable attorneys' fees and costs under 17 U.S.C. § 505, which provides that "the court in its discretion may allow the recovery of full costs by or against any party . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs. "In copyright cases, although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be rewarded routinely." E. Beats Music, 433 F. Supp. 2d at 1327 (quoting Arista Records, Inc. v. Beker Enters., Inc., 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003)) (internal quotations omitted). "A showing of willfulness provides further justification for such an award." Id. (quoting the same). In light of the above-stated findings of fact, including the

9

Court's determination that Defendants' actions were willful and that a deterrent to Defendants' infringing conduct must be provided, the Court finds that an award of reasonable attorney's fees and costs "will further the goals of the Copyright Act." See MiTek Holdings, Inc. v. Arce Eng'g, Inc., 198 F.3d 840 (11th Cir. 1999). The Court's final task, then, is to determine the reasonableness of Plaintiffs' request for attorneys' fees and costs incurred in bringing this action.

"The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (internal quotations omitted). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court must consider the twelve factors[2] enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)." Id. The product of these two figures is the "lodestar." Id. After calculating the lodestar, the Court may then consider whether it should be adjusted upwards or downwards. Norman v. Hous. Auth., 836 F.2d 1292, 1302 (11th Cir. 1988); Lambert v. Fulton Cnty., 151 F. Supp. 2d 1364, 1369 (N.D. Ga. 2000). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d at 1303.

---

[2] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Bivins, 548 F.3d at 1350 n.2.

*i. Reasonable Hourly Rate*

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299. The "going rate" in the community is the most critical factor in setting the fee rate. Martin v. Univ. of S. Ala., 911 F.2d 604, 610 (11th Cir. 1990). The relevant legal community is the district in which the court sits. Knight v. Alabama, 824 F. Supp. 1022, 1027 n.1 (N.D. Ala. 1993) (citing Turner v. Sec'y of Air Force, 944 F.2d 804, 808 (11th Cir. 1991)). Because the Court is itself considered an expert on hourly rates in the community, it may consult its own experience in forming an independent judgment. Norman, 836 F.2d at 1303.

Plaintiffs seek an hourly rate of $385.00 per hour for Mr. Pumpian's time,[3] and $295.00 per hour for Mr. Covington. (Pumpian Decl., Doc 12-4, ¶¶ 10-11.) This Court, however, has previously approved $275.00 per hour as a reasonable billing rate in Statesboro as well as comparable legal markets. See Ojeda-Sanchez v. Bland Farms, No. 6:08-CV-96, Doc 390 (S.D. Ga. Oct. 16, 2013); M.I.T., Inc. v. Medcare Express, N. Charleston, LLC et al., No. 1:14-cv-081, Doc. 12 (S.D. Ga. Oct. 14, 2014). Upon consideration of the relevant legal market, the underlying discovery dispute at issue in this case, and counsel's experience and expertise, the Court sets the billing rate at $275.00 per hour for Mr. Covington.

*ii. Hours Reasonably Expended*

When exercising proper "billing judgment," attorneys must exclude excessive, redundant, or otherwise unnecessary hours from fee

---

[3] Mr. Pumpian has not appeared before the Court as counsel in this case. Accordingly, this Court finds he is not entitled to attorney's fees.

11

applications. <u>ACLU of Ga. v. Barnes</u>, 168 F.3d 423, 428 (11th Cir. 1999). "[H]ours excluded are those that would be unreasonable to bill a client" without reference to the skill, reputation, or experience of counsel. <u>Norman</u>, 836 F.2d at 1301. "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." <u>Id.</u>

Plaintiffs provided detailed billing records indicating Mr. Covington worked a total of 6.2 hours on the case. (Pumpian Decl., Ex. A.) After reviewing these records, the Court finds that the requested hours should be compensated. Accordingly, the Court finds the lodestar in this case to be $275.00/hour at 6.2 hours, or $1,705. Taking into account the filing fees and costs of service of process on Defendants, the total award of fees and costs is $2,265.00.

### III. CONCLUSION

Based upon the foregoing, Plaintiffs' motion for default judgment (doc. 12) is **GRANTED**. The Clerk is instructed to enter judgment in favor of Plaintiffs and against Defendants in total amount of $44,265.00. The Clerk is **DIRECTED** to **TERMINATE** all deadlines and motions , and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 28th day of May, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA